UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LUIS TRUJILLO VAZQUEZ,

                Petitioner,

     v.

BRUCE SCOTT et al.,

                Respondents.

CASE NO. 2:26-cv-01742-LK

ORDER DENYING PETITION FOR
HABEAS CORPUS

     This matter comes before the Court on Petitioner Luis Trujillo Vazquez's petition for a writ of habeas corpus. Dkt. No. 1. For the reasons discussed below, the Court denies the petition.[1]

## I.   BACKGROUND

     Trujillo Vazquez is a native and citizen of Mexico "who was admitted to the United States as a nonimmigrant visitor for pleasure at or near Nogales, Arizona, on or around April 17, 2019, not to exceed authorization beyond October 16, 20[1]9." Dkt. No. 7 at 2. However, he remained in the United States past October 16, 2019, without authorization to do so. *Id.*

---

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009) (holding that "the district court must hold an evidentiary hearing" where "the record is insufficient to decide whether [the petitioner's] detention is authorized").

ORDER DENYING PETITION FOR HABEAS CORPUS - 1

Trujillo Vazquez was arrested on May 29, 2021, by the Iron County Sheriff's Office in Utah and "charged with one count of felony forcible sexual abuse under Utah Code Ann. § 76-5-404 and assault under Utah Code Ann. § 76-5-102." *Id.* "The Iron County Sheriff's Office notified [U.S. Immigration and Customs Enforcement ('ICE'), Enforcement and Removal Operations ('ERO')] Salt Lake City who interviewed [Trujillo Vazquez] on or around May 30, 2021, during which [he] admitted to being a Mexican citizen." *Id.* According to Respondents, Trujillo Vazquez "has yet to be acquitted of these violent felony charges." *Id.*

On April 17, 2026, Trujillo Vazquez was convicted in Washington County, Utah of "possession of a controlled substance – marijuana or spice under Utah Code Ann. § 58-37-8(2)(d) and use or possession of drug paraphernalia under Utah Code Ann. § 58-37A-5(1), both misdemeanors, and sentenced to 180 and 90 days respectively for these convictions." *Id.*  On April 20, 2026, ERO served Trujillo Vazquez with an arrest warrant and notice of detention and took him into custody. *Id.* at 3; Dkt. No. 6-2. The same day, Trujillo Vazquez was served with a Notice to Appear ("NTA") charging him as removable from the United States pursuant to Section 237(a)(1)(B) of the Immigration and Nationality Act ("INA") (8 U.S.C. § 1227(a)(1)(B). Dkt. No. 7 at 3; *see also* Dkt. No. 6-1 at 2 (finding Trujillo Vazquez removable because he "remained in the United States for a time longer than permitted, in violation of this Act or any other law of the United States").

On April 21, 2026, Trujillo Vazquez was transferred to the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. No. 7 at 3. On April 29, Trujillo Vazquez, who was represented by counsel, had a bond hearing before an immigration judge ("IJ"). *Id.* The IJ found that Trujillo Vazquez failed to demonstrate that he was not a flight risk and denied bond. *Id.*; Dkt. No. 6-5 at 2. Trujillo Vazquez reserved appeal of the decision to the Board of Immigration Appeals ("BIA"), but he has not appealed. Dkt. No. 7 at 3.

ORDER DENYING PETITION FOR HABEAS CORPUS - 2

"At a master calendar hearing on May 5, 2026, [Trujillo Vazquez] admitted the allegations on his NTA and conceded to his sole charge of removability under INA § 237(a)(1)(B)." *Id.* He filed applications for relief from removal, and he had an individual hearing on the merits of his requests for relief on June 15, 2026. *Id.*

Meanwhile, Trujillo Vazquez filed this petition for habeas corpus on May 20, 2026. Dkt. No. 1. Respondents[2] filed a return, Dkt. No. 5, and Trujillo Vazquez filed a traverse, Dkt. No. 8. The Court ordered the parties to file a joint status report within five days of receiving a decision regarding Trujillo Vazquez's June 15, 2026 individual merits hearing "(1) identifying the outcome of that hearing, and (2) listing each party's position as to whether that outcome affects the merits of the pending petition." Dkt. No. 10. In their joint status report, the parties stated that at the conclusion of the hearing, the IJ ordered Trujillo Vazquez removed. Dkt. No. 11 at 1. Trujillo Vazquez plans to appeal that decision. *Id.* Trujillo Vazquez asserts that regardless of those proceedings, his habeas petition remains ripe for adjudication. *Id.* at 2. Respondents do not dispute that the petition remains ripe, and they contend that the IJ's "denial of [Trujillo Vazquez's] applications for relief from removal can be reasonably viewed as reinforcing the earlier bond determination that [he] poses a flight risk" because that decision "increases his incentive to abscond." *Id.* at 2, 4.

## II.    DISCUSSION

In his habeas petition, Trujillo Vazquez contends that the Department of Homeland Security ("DHS") "arrested and detained [him] pursuant to an improper and internally

---

[2] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary" (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

ORDER DENYING PETITION FOR HABEAS CORPUS - 3

contradictory statutory framework reflected in its own records." Dkt. No. 1 at 2. Specifically, DHS "charged him under provisions applicable to individuals allegedly present without admission or parole" even though he lawfully entered the United States on a B-2 visa. *Id.* Trujillo Vazquez further contends that DHS detained him "without constitutionally adequate individualized justification at the time his liberty was taken and relied on a constitutionally impermissible 'detain first, justify later' approach to civil immigration detention." *Id.* Finally, he contends that his bond hearing was constitutionally deficient. *Id.* Respondents contend that Trujillo Vazquez's arrest, detention, and bond hearing were consistent with the statute and due process requirements, and that he has presented no arguments to excuse the exhaustion requirement regarding his allegedly deficient bond hearing. Dkt. No. 5 at 1–2.

## A.    Legal Standard

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and

ORDER DENYING PETITION FOR HABEAS CORPUS - 4

flexibility are inherent in equitable remedies." *Roman v. Wolf*, 977 F.3d 935, 942 (9th Cir. 2020) (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

**B.      Trujillo Vazquez Has Not Shown that His Detention Violated Due Process**

The parties agree that Trujillo Vazquez is detained pursuant to Section 1226(a) of the INA. Dkt. No. 1 at 12, 16; Dkt. No. 5 at 2. The applicable statute matters because the constitutional process required is not necessarily the same for "different statutory provision[s] with [their] own procedural safeguards in place." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022).

Trujillo Vazquez contends that "[d]espite acknowledging [his] lawful visa admission, DHS simultaneously charged [him] under INA §§ 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I), alleging that [he] was present in the United States 'without being admitted or paroled' and without valid entry documents," even though he had been admitted in 2019 on a visa. Dkt. No. 1 at 9. He argues that "[t]hat contradiction is legally significant because immigration detention authority depends upon the correct statutory classification of the noncitizen being detained," and "internally contradictory allegations cannot provide a constitutionally sufficient basis for incarceration." *Id.* at 9–10. He also argues that his arrest and detention were unlawful because at the time of his arrest,

ORDER DENYING PETITION FOR HABEAS CORPUS - 5

> DHS made no meaningful showing that [he] posed either a danger to the community or a genuine flight risk warranting incarceration. Such detention is inconsistent with the individualized custody framework contemplated by 8 U.S.C. § 1226(a) and 8 C.F.R. § 236.1(c)(8), and violates the Due Process Clause's prohibition against arbitrary civil detention.

*Id.* at 12 (citing *Zadvydas*, 533 U.S. at 690).

Respondents argue that Section 1226(a) "authorizes the Attorney General to arrest and detain a noncitizen 'pending a decision on whether the [noncitizen] is to be removed from the United States.'" Dkt. No. 5 at 2 (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) and 8 U.S.C. § 1226(a)). They contend that "[b]ecause [Trujillo Vazquez] was neither in active removal proceedings nor subject to any conditional release, his April 2026 arrest is distinguishable from the body of cases in this District holding that a noncitizen is entitled to a pre-deprivation hearing prior to the revocation of an order of recognizance, parole, or other forms of conditional liberty pending the finality of their removal proceedings." *Id.* at 4–5. Thus, he was not entitled to notice or a pre-deprivation hearing. *Id.* at 5. Respondents also contend that regardless of the statutory authority listed in the Form I-213, "[t]he administrative warrant—not the Form I-213—is the legal basis for [Trujillo Vazquez's] arrest." *Id.* at 5 (citing Dkt. No. 6-2 at 3). "The determination to issue the warrant was based on biometric identity confirmation, records checks, and [Trujillo Vazquez's] voluntary admissions to ICE that he lacks lawful status in the United States." *Id.* (citing Dkt. No. 6-2 at 3). And finally, the "NTA charges him with removability under the correct statutory framework, 8 U.S.C. § 1226(a), he has been treated as subject to that framework since his arrest, . . . and [Trujillo Vazquez] conceded that he is removable as charged." *Id.* (citing; Dkt. No. 6-5; Dkt. No. 7 at 3). According to Respondents, Trujillo Vazquez's "assertions regarding the Form I-213 are legally irrelevant." *Id.*

The federal statute authorizing detention and removal of noncitizens who overstay a visitor visa is 8 U.S.C. § 1227(a)(1)(C)(i), which authorizes removal of a noncitizen admitted as a

ORDER DENYING PETITION FOR HABEAS CORPUS - 6

nonimmigrant who failed to maintain their nonimmigrant status. *Benipal v. Rokosky*, No. CV 26-01306 PHX RM (CDB), 2026 WL 1355010, at *3 n.2 (D. Ariz. Apr. 24, 2026), *report and recommendation adopted*, 2026 WL 1352061 (D. Ariz. May 14, 2026). In this circumstance, detention is authorized by 8 U.S.C. § 1226. *Id.* As the Supreme Court instructed in *Jennings*, "Section 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of a[] [noncitizen]" pending a removal decision. 583 U.S. at 288 (quoting 8 U.S.C. § 1226(a)). Section 1226 authorizes the government to detain a noncitizen "pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a); *see also Jennings*, 583 U.S. at 288 ("Section 1226 generally governs the process of arresting and detaining . . . [noncitizens] pending their removal.").

Trujillo Vazquez does not dispute that DHS had the authority to arrest and detain him, but he argues that DHS failed to provide "constitutionally adequate procedures and a lawful, individualized justification." Dkt. No. 8 at 10. However, he does not list any procedure that was due but withheld from him or argue that the government had to provide pre-detention notice or process under these circumstances. *See generally* Dkt. Nos. 1, 8; *see also Cotoc Yac De Yac v. Hermosillo*, No. 2:25-CV-02593-DGE-TLF, 2026 WL 124334, at *4 (W.D. Wash. Jan. 16, 2026) (finding that petitioner failed to establish that she was entitled to pre-detention notice or process where she was not subject to an order of supervision or engaged in active removal proceedings at the time she was detained). Trujillo Vazquez cites 8 U.S.C. § 1226(a) and 8 C.F.R. § 236.1(c)(8) in his petition, Dkt. No. 1 at 12, but he identifies no procedural requirements therein that he was denied. Nor does he address the fact that DHS did provide a lawful, individualized, and correct justification in the NTA: Trujillo Vazquez remained in the United States without authorization after his visa expired. Dkt. No. 6-1 at 2.

ORDER DENYING PETITION FOR HABEAS CORPUS - 7

In addition, the Court agrees with Respondents that Trujillo Vazquez has not shown any legal relevance in the partially erroneous citation in his Form I-213. Dkt. No. 6-3 at 4.[3] The I-213 is not the legal basis for Trujillo Vazquez's detention, and the contemporaneously issued NTA, Dkt. No. 6-1 at 2, and warrant for arrest, Dkt. No. 6-2 at 3, included the correct information. In light of these facts, Trujillo Vazquez has not shown that his arrest and detention violated his due process rights.

## C.    Prudential Exhaustion Is Required

Trujillo Vazquez contends that his bond determination failed to provide due process because that decision "provides no reasoning, applies no identifiable legal standard, and disregards undisputed evidence demonstrating that [he] is not a flight risk." Dkt. No. 1 at 13. He argues that the IJ relied on "allegations [that] were old and had not resulted in a conviction" and completed a "checked-box form" without factual findings, analysis, or an explanation. *Id.* at 14. He also avers that the IJ failed to consider the factors under Section 1226(a). *Id.* at 16–17.

Respondents argue that Trujillo Vazquez "makes no effort to establish a basis for waiving the prudential exhaustion requirement," and prudential exhaustion should be required here. Dkt. No. 5 at 5–6. They contend that "[t]he Ninth Circuit has cautioned that courts should be careful not to excuse exhaustion where, as here, 'relaxation of exhaustion requirements would encourage the deliberate bypass of the administrative scheme.'" *Id.* at 6 (quoting *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 882 (9th Cir. 2003)). According to Respondents, all three of the factors in *Puga v. Chertoff*, 488 F.3d 812 (9th Cir. 2007) "favor enforcing the exhaustion requirement in this case." *Id.* First, "the BIA has subject-matter expertise for individual immigration bond decisions, even if

---

[3] The Form I-213 states that Trujillo Vazquez is "amenable to removal" under Section "212(a)(6)(A)(i) of the [INA] in that [he] is an alien present in the United States without being admitted or paroled" and under "212(a)(7)(A)(i)(I) of the [INA] as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa[.]" Dkt. No. 6-3 at 4.

ORDER DENYING PETITION FOR HABEAS CORPUS - 8

the BIA's review of the bond denial decision would not reach the specific constitutional claim raised in this case." *Id.* Second, "this is not a case involving a 'discrete legal question, the resolution of which may provide concrete guidance for future administrative proceedings.'" *Id.* at 7 (quoting *W.T.M. v. Bondi*, No. 2:25-CV-02428-RAJ-BAT, 2026 WL 262583 (W.D. Wash. Jan. 30, 2026)). Instead, Trujillo Vazquez "challenges a fact-specific bond determination that lacks any novel legal question or broader guidance value beyond the circumstance presented here." *Id.* Third, "the BIA can review bond determinations and could preclude the need for judicial review." *Id.* Respondents also note that even if the *Puga* factors weigh in favor of requiring exhaustion, a petitioner can be excused from the exhaustion requirement by showing that one of *Laing* factors applies to their case, but Trujillo Vazquez has not done so. *Id.* at 7–8 (citing *Laing v. Ashcroft*, 370 F.3d 994 (9th Cir. 2004)). Finally, Respondents argue that even if the Court excuses the exhaustion requirement and addresses the merits of the petition, Trujillo Vazquez has not identified any constitutional or legal errors that would entitle him to release, and he received a constitutionally adequate bond hearing. Dkt. No. 5 at 8–17. They also contend that Trujillo Vazquez "should not be permitted to assert a due process challenge to the absence of a more comprehensive explanation of the IJ's flight risk determination by unilaterally creating the absence of a more wholistic administrative record in choosing to forgo an appeal." *Id.* at 9.

In his traverse, Trujillo Vazquez argues that "[a]dditional administrative review cannot retroactively supply the individualized analysis, consideration of alternatives, or reasoned explanation that was lacking when [his] liberty was deprived." Dkt. No. 8 at 3. He also argues that Respondents have produced no evidence to show that his bond hearing complied with due process. *Id.* at 5.

Even though Trujillo Vazquez is represented by counsel, his petition contains no arguments regarding exhaustion. *See generally* Dkt. No. 1. A petitioner cannot amend his petition or add new

claims through a traverse. *See, e.g.*, *Calderon v. Noem*, No. 2:25-cv-2136-LK-TLF, 2025 WL 3754042, at *4 (W.D. Wash. Dec. 29, 2025) (collecting cases). Even if the Court were to consider the exhaustion issue, though, Trujillo Vazquez would not prevail.[4]

    1.  Legal Standard

The Court generally does not have jurisdiction to review discretionary bond decisions. 8 U.S.C. § 1226(e). However, Section 1226(e) does not "strip federal courts of traditional habeas jurisdiction" to adjudicate "constitutional claims or questions of law regarding immigration detention under § 1226." *Martinez v. Clark*, 124 F.4th 775, 781–82 (9th Cir. 2024) (citation modified).

"The exhaustion requirement is prudential, rather than jurisdictional, for habeas claims." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Courts may require prudential exhaustion when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Id.* (quoting *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)). Even where requiring exhaustion may be permissible, there are several exceptions warranting a district court's review, such as when requiring exhaustion causes undue prejudice, including prejudice caused by "an unreasonable or indefinite timeframe for administrative action," *McCarthy v. Madigan*, 503 U.S. 140, 146–47 (1992); or "where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void," *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688

---

[4] The Court does not consider the Declaration of Vicky J. Currie submitted with Trujillo Vazquez's traverse because the declaration is not signed under penalty of perjury or otherwise in substantial compliance with 28 U.S.C. § 1746. Dkt. No. 9.

n.4 (9th Cir. 1981); *see also Laing*, 370 F.3d at 1000.

        2.   Prudential Exhaustion Is Required Here

        Here, the facts and factors weigh in favor of requiring exhaustion. The first *Puga* factor considers whether "agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision[.]" *Puga*, 488 F.3d at 815. That is the case here because Trujillo Vazquez contends that the IJ failed to adequately explain the no bond decision, Dkt. No. 1 at 13, failed to consider relevant factors, and relied on a "stale" arrest, Dkt. No. 8 at 5–7, but Trujillo Vazquez's decision not to appeal the IJ's decision caused a memorandum not to be issued and the now underdeveloped record. IJs typically render oral decisions in bond proceedings, and prepare a written decision only "[i]f either party appeals" the bond decision. Immigration Court Practice Manual ch. 8.3(e)(7), *available at* https://www.justice.gov/eoir/policy-manual-eoir/part-II/icpm/chapter-8-3. Because Trujillo Vazquez did not appeal, no written decision was prepared. *Id.* Accordingly, the first *Puga* factor weighs strongly in favor of exhaustion because "initiating an appeal was necessary to develop the record, to clarify the IJ's reasoning, and for the parties and this Court to discern whether any constitutional error or harm transpired." *Lueth v. Scott*, No. 2:26-cv-01170-SKV, Dkt. No. 14 at 7 (W.D. Wash. May 1, 2026); *see also id.* at 8 ("Petitioner did not appeal, so the IJ did not provide him with a written decision that likely would have clarified ambiguities he now presents as indicia that his bond hearing may have fallen short of due process."); *Singh v. Holder*, 638 F.3d 1196, 1209 (9th Cir. 2011) (finding that petitioner had not shown that a recording or transcript would reveal any error that was "not sufficiently apparent from the IJ's memorandum decision"); *Herman v. DHS*, No. 5:26-CV-01995-MBK, 2026 WL 1723960, at *4 (C.D. Cal. June 12, 2026) ("Petitioner is only entitled to relief if he demonstrates that he was prejudiced by this procedural due process violation.").

For the same reasons, the second *Puga* factor also weighs in favor of requiring exhaustion because "relaxation of the requirement would encourage the deliberate bypass of the administrative scheme[.]" *Puga*, 488 F.3d at 815; *see also Zuo v. Hermosillo*, No. 2:26-cv-00708-JHC, 2026 WL 809882, at *2 (W.D. Wash. Mar. 24, 2026) (requiring exhaustion to develop the record, and "further proceedings in the immigration court could preclude the need for judicial review and failure to require exhaustion could encourage the deliberate bypass of the agency"). Trujillo Vazquez seems to have bypassed an appeal to strengthen his arguments before the Court that the IJ abused his discretion by failing to explain the decision, using a checked-box form, and relying on improper factors. Dkt. No. 1 at 13. But "[h]ad he appealed, the IJ's reasoning would have been reduced to writing for BIA review." *Lueth*, No. 2:26-cv-01170-SKV, Dkt. No. 14 at 9; *see also* Dkt. No. 2 at 2 (immigration counsel declaring that "[d]espite acknowledging that the allegations" regarding Trujillo Vazquez's prior arrest "were old and had not resulted in a conviction, his decision *seemed like* it was strongly influenced by the allegations") (emphasis added); Dkt. No. 1 at 3 (averring that the IJ "relied upon" those allegations "in concluding that [Trujillo Vazquez] presented a flight risk warranting continued detention"). Moreover, this case does not involve a "discrete legal question, the resolution of which may provide concrete guidance for future administrative proceedings." *W.T.M.*, 2026 WL 262583, at *2 (citation modified). Rather, as Respondents argue, Trujillo Vazquez "challenges a fact-specific bond determination that lacks any novel legal question or broader guidance value beyond the circumstance presented here." Dkt. No. 5 at 7.[5]

---

[5] Although Trujillo Vasquez contends that the government "*provided* arrest-related allegations only minutes before the hearing, leaving insufficient time to investigate or meaningfully respond before the IJ rendered a 'no bond' determination," Dkt. No. 8 at 5 (emphasis added), that is not what bond counsel's declaration (to which the traverse fails to cite) says. Instead, the declaration states that the Government "*provided* evidence that included prior arrest allegations" "*[s]hortly before* the hearing" without specifying how far in advance of the hearing that was. Dkt. No. 2 at 2 (emphasis added). For additional unspecified reasons, counsel "*received* the Government's evidence *only minutes* before the hearing." *Id.* (emphasis added). Even if Trujillo Vasquez had properly supported his factual contentions

ORDER DENYING PETITION FOR HABEAS CORPUS - 12

As for the third factor, if the agency did make mistakes, administrative review is likely to allow the agency to correct them. *Puga*, 488 F.3d at 815. The *Puga* factors thus weigh in favor of requiring exhaustion.

Nor has Trujillo Vazquez shown that any of the *Laing* factors apply and justify excusing exhaustion. *Laing*, 370 F.3d at 1000–01. "The party moving the court to waive prudential exhaustion requirements bears the burden of demonstrating that at least one of these *Laing* factors applies." *Aden v. Nielsen*, No. 2:18-cv-1441-RSL, 2019 WL 5802013, at *2 (W.D. Wash. Nov. 7, 2019) (citing *Ortega-Rangel v. Sessions*, 313 F. Supp. 3d 993, 1003 (N.D. Cal. 2018) and *Leonardo v. Crawford*, 646 F.3d 1157, 1161 (9th Cir. 2011) (declining to waive exhaustion requirements because petitioner has not "demonstrated grounds for excusing [them]")). Trujillo Vazquez argues that "[b]ecause the alleged violation is procedural and constitutional in nature, requiring [him] to pursue administrative review would serve only to delay judicial intervention without any meaningful likelihood of relief." Dkt. No. 8 at 3. That conclusory argument is unsupported any citations or facts. And as set forth above, the Court has not found any constitutional errors in his detention.

Finally, Trujillo Vazquez argues that the government is required to provide "a reasoned explanation at the time liberty is restrained," *id.* at 3–4, but as set forth above, the government did so in the arrest warrant and NTA, Dkt. Nos. 6-1, 6-2. Accordingly, Trujillo Vazquez has failed to make the requisite individualized showing of irreparable harm to warrant waiver of exhaustion in this case. *See Zuo*, 2026 WL 809882, at *2 (declining to waive exhaustion requirement when petitioner failed to make specific contentions regarding irreparable harm). "To conclude otherwise, the Court would need to forgive Petitioner his burden under *Laing*, engage in a fact-finding mission

---

with citations to the record, the vague declaration does not establish that there were procedural issues with the bond hearing.

ORDER DENYING PETITION FOR HABEAS CORPUS - 13

on Petitioner's behalf, or speculate as to harms Petitioner may suffer while detained during the pendency of BIA review. This the Court [should] not do." *Calderon v. Mullin*, No. 2:26-cv-01512-GJL, 2026 WL 1487774, at *3 (W.D. Wash. May 28, 2026). Because the Court dismisses the petition due to the failure to exhaust administrative remedies, the Court does not reach the merits of the parties' substantive arguments about the bond hearing.

### III.  CONCLUSION

For the foregoing reasons, the Court DENIES the petition for a writ of habeas corpus. Dkt. No. 1.

Dated this 3rd day of August, 2026.

_____
Lauren King
United States District Judge

ORDER DENYING PETITION FOR HABEAS CORPUS - 14